# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALISON M., | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1248 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Alison M. applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, 1382c(3)(A), nearly five years ago. (Administrative Record (R.) 201-218). She claimed that she became disabled as of January 18, 2014 (R. 201), due to lupus, chronic pain and chronic fatigue due to fibromyalgia, migraines, emphysema, and high blood pressure. (R. 249). Over the ensuing four years, Alison M's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Alison M filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636( c) on March 8, 2018. [Dkt. #5]. The case was fully briefed as of October 17, 2018 and reassigned to me on January 8, 2019. [Dkt. #21]. Alison M asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

Alison M is 54 years old, and was 52 at the time of the ALJ's decision. (R. 201). She has an excellent work history, working steadily for the last 25 years (R. 228), most recently in telemarketing, credit card processing, and beauty supply sales. (R. 250). These were all sedentary jobs Alison M performed mostly while sitting, over the phone. (R. 280-82). In her last job in telemarketing, which was part-time, she had to take frequent days off due to her impairments and, finally, had to quit in January 2014. (R. 41, 282).

Alison M has accumulated a 400-page medical record (R. 364-781) – covering treatment for a constellation of maladies. But, according to the parties, very little of it is pertinent. Alison M cites to no more than a dozen pages of medical evidence to support her argument for overturning the ALJ's decision. (Dkt. #10, at 5, 9). The Commissioner doesn't point to any medical evidence aside from the reports of the agency doctors who reviewed the record. (Dkt. #17, at 8). Accordingly, we will dispense with a tedious summary and discuss only those doctor visits and medical findings that the parties tell us matter.

After an administrative hearing – at which Alison M, represented by counsel, and a vocational expert testified – the ALJ determined she was not disabled. The ALJ found that Alison M had several severe impairments: "lupus; fibromyalgia; migraines/headaches; osteoarthritis of the knees, bilaterally; and lumbosacral spondylosis, without myelopathy or radiculopathy." (R. 20). The ALJ dismissed other impairments that came up at various points in the medical record – including hypertension, patellofemoral stress syndrome, and affective disorder – as non-severe. (R. 21-22). Alison M's affective disorder did cause mild limitations in the areas of daily activities, social functioning, and concentration, persistence, and pace. (R. 21-22). None of Alison M's impairments,

singly or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings. (R. 22-23). In reaching that conclusion, the ALJ specifically considered listing 1.02, for musculoskeletal disorders and section 14.00 covering immune system disorders including lupus, under listing 14.02. (R. 23). The ALJ then determined that Alison M could perform "light work . . . [but] could not work at unprotected heights and should not climb ladders ropes, or scaffolds. [She] should not work around hazardous machinery. [She] could only occasionally climb ramps and stairs, stoop, crouch, squat, and crawl. [She] should avoid exposure to extreme temperatures, humidity, and pulmonary irritants. She should work on a flat, even surface for standing and/or walking." (R. 23). Along the way, the ALJ said that he found Alison M's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 24). The ALJ then went on to summarized the medical record and assess reports from doctors. She gave significant weigh to the opinions from non-examining agency physicians who found Alison M limited to light work not involving extreme temperatures, humidity, hazards, or pulmonary irritants, explaining that they were well-supported by the medical evidence considered. (R. 24). She gave no weight to the reports from a state agency psychologists, both reviewer and examiner, because their findings[1] were not supported by the record.

---

[1] The examining consultant found Alison M suffered from major depression and assigned a GAF score of just 35 (R. 396), indicating that Alison M had "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work...)." *Lanigan v. Berryhill*, 865 F.3d 558, 561 (7th Cir. 2017). The reviewing psychologist rejected that GAF score as subjective and found Alison M moderately limited
(continued...)

(R. 26). She did not give great or controlling weight to the opinion from Alison M's treating physician because he failed to document specific limitations and recommended a functional capacities evaluation, which it seemed Alison M never had. (R. 25). The ALJ also dismissed assessments from Alison M's physical therapists because they were based on self-reports and were not supported by objective findings. (R. 26).

Next, the ALJ found that Alison M was capable of performing her [ast relevant work as a beauty supply sales representative, a financial service sales agent, or a telephone solicitor. (R. 26). The first two jobs, according to the vocational expert's testimony were light and skilled as generally performed, but sedentary as performed by Alison M, and the third was sedentary and semi-skilled. (R. 26). Additionally, the ALJ found that Alison M was 49 years old when she claimed she became disabled, and that made her an individual "closely approaching advanced age" under the Commissioner's regulations. (R. 26). She had a limited education, and as transferability of job skills was not an issue, Alison M would be found "not disabled" under the Medical Vocational Guidelines if he had the capacity to perform a full range of light work. (R. 24). As he did not, the ALJ pointed to the testimony of a vocational expert who said that an individual with Alison M's restrictions could perform light work as a café attendant, a photocopy operator, or a marker. (R. 26). As these jobs exist in significant numbers in the national economy, the ALJ said that a finding of not disabled would be appropriate in this alternative analysis. (R. 27). Finally, the ALJ concluded that Alison M was not disabled and was not entitled to DIB or SSI under the Act. (R. 27).

---

[1](...continued)
only in her ability to carry out instructions and maintain concentration. (R. 85-90, 98-103).

**II.**

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not

5

build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

### III.

### A.

Alison M argues that the ALJ's decision must be remanded for a handful of reasons, beginning with the ALJ's analysis of whether she suffers from an impairment or combination of impairments that meet the requirements of the conditions considered disabling under the Commissioner's Listing of Impairments. Because there are some obvious flaws in the ALJ's analysis in this regard, this case must be remanded, and we need not delve too deeply into Alison M's other arguments.

### A.

Alison M argues that the ALJ's evaluation of whether her impairments met or equaled a listed impairment – meaning that she is presumed disabled – was inadequate. Specifically, Alison M points out that the ALJ failed to consider her fibromyalgia under listing 14.09 or her migraines under listing 11.03.

At step three, an ALJ must discuss each pertinent listing by name and offer more than a perfunctory analysis. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381

F.3d 664, 668 (7th Cir. 2004). Here, the ALJ said that Alison M did not have a physical impairment that met or equaled any of the listed impairments and explained:

> In reaching this finding, all of the claimant's impairments have been considered, both individually and in combination. The undersigned has particularly considered the requirements of listing 1.02 for musculoskeletal impairments and finds that the claimant does not have involvement of a joint resulting in an inability to ambulate effectively. The claimant does not have the nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication required to meet listing 1.04. Her condition fails to meet any of the requirements set forth in the 14.00 series of listings for immune system disorders, including 14.02 for systemic lupus erythematosus. Moreover, the undersigned notes that there are no opinions in the record from medical sources indicating that the claimant's impairments either meet or equal a listing.

(R. 23). Clearly, that's a perfunctory analysis and, worse, the ALJ neither mentions the pertinent listing for fibromyalgia, nor any listing for migraines, despite having found both to be severe impairments.

So, let's look at the listing that stands in for fibromayagla, Listing 14.09D for inflammatory arthritis. SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, (S.S.A. July 25, 2012), at *6. It provides that inflammatory arthritis is a disabling condition where a claimant suffers from

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.09D. Thus, in addition to symptoms associated with inflammatory arthritis, Listing 14.09D requires "marked" difficulties in any one of the following:

7

daily living, social functioning, and ability to complete tasks. *Id.* Contrary to the Commissioner's argument, Alison M presented evidence of all these limitations.

In terms of activities of daily living, Alison M indicates she is extremely limited. (R. 267, 270). She spends four hours a day napping. (R. 44, 294). She had to be coaxed to get out of bed. (R. 295). She must rest after every activity. (R. 46, 294). She needs help with chores. (R. 295). She can no longer do things the way she used to, like cooking, chores, or driving. (R. 267, 295). As for social activities, she has few if any. (R. 270, 272). She goes out of the house only if necessary. (R. 295, 297, 299). And, repeatedly, she has reported that her memory is bad and she struggles to complete simple tasks. (R. 271, 293, 295, 298). As such, there's plenty of evidence regarding the requirements of the listing, but the question would be whether any of these constitute marked limitations?

Because the Commissioner ignores the evidence Alison M presented, there is no discussion in her brief about whether it meets the listings or what it takes to meet those listings. We note that the ALJ essentially rejected all of Ms. Mackenzie's allegations about her limitations, but did so in the context of finding she had no severe mental impairment. (R. 21-22). The ALJ gave a couple of reasons for not believing her, neither of which hold water. First, the ALJ cited gaps in treatment. (R. 21). That could be a valid reason to disbelieve a claimant, but an ALJ must inquire into what led to the gap. *See Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)(ALJ must explore reasons for gap in treatment); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). There's no mention of that in the opinion; no indication the ALJ followed the applicable caselaw.

The ALJ also felt Alison M's allegations were inconsistent between a form she filled out in

8

May 2014 and her consultative exam in March 2015. (R. 21). If that's the case, it's not surprising. Fibromyalgia can flare up from time to time, SSR 12-2p, at *5, and Alison M's other severe impairments – osteoarthritis and the knees and lumbosacral spondylitis are progressive diseases. Both Alison M and her treating physician say, rather consistently, that she is getting worse over time. (R. 293, 733, 736, 739). But, even so, the record doesn't support the ALJ's take.

According to the ALJ, in May 2014, Alison M reported that "she was independent with personal care issues, did not need reminders to take care of personal needs and grooming, went out alone, and drove a car." (R. 21). But, Alison M actually reported that among the things that was able to do before her illness that she could no long do were "almost everything, driving, hurts, walking, sitting." (R. 267). She "used to cook complete meals, now [she] can only do simple things" like sandwiches or heating up something from a can. (R. 268). She had to be reminded to do laundry. (R. 268). She had a cleaning lady in to clean her house. (R. 269). She goes outside once or twice a week, if she is e; often she is too weak, in pain, or has a migraine. (R. 269). All her activities have decreased due to pain and migraines. (R. 270). That's a far cry from the gist the ALJ tried to give.

As for social functioning, the evidence is that Alison M engages in little or no social activity. Again, in May 2014, she reported that she rarely leaves the house; ditto in January 2015. (R. 297). She doesn't spend time with others very often – and only if they come to visit her. (R. 297). She no longer goes anywhere on a regular basis. (R. 270, 297). Her report to the agency's consulting psychologist were much the same. (R. 395). The ALJ didn't mention any of these limitations, and said that any restriction was merely mild because there was no evidence of mental health treatment and, although the agency psychiatrist that performed a consultative exam found she had a major

9

impairment, this was based on Alison M's subjective statements. (R. 22). Neither reason is convincing. As the ALJ said herself, Alison M says her limitations are due to pain and migraines; why would she seek mental health counseling for them? And of course the consulting psychiatrists findings are based on Alison M's subjective complaints. That's how mental healthcare works. *Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). There's no MRI for depression or anxiety.

The ALJ also gave short shrift to Alison M's allegations about her difficulty concentrating and completing tasks. (R. 22). She said she acknowledged the allegations, but dismissed them based on the "totality of the evidence." (R. 22). There's no telling what that evidence might be, as the ALJ doesn't say. Again, Alison M's allegations on this point are consistent. (R. 271, 293, 295, 298).

Clearly, then, this case must be remanded for the ALJ to offer more than a perfunctory listing analysis. *Minnick*, 775 F.3d at 935. While the focus here is on Alison M's fibromyalgia, the same can be said for her migraines. The ALJ found her migraines to be a severe impairment, but failed to discuss whether they met the applicable listing (R. 22-23), which happens to be listing 11.02 (and, formerly, listing 11.03). *See, e.g., Horner v. Berryhill*, 2018 WL 3920660, at *2 (N.D. Ill. Aug. 16, 2018)(remand where ALJ failed to identify the listing for migraines or explain why plaintiff does not meet it). On remand, that ALJ must actually address and consider the evidence in regard to the applicable listings at step three.

**B.**

Even though a remand is necessary in any event, it is worthwhile to circle back to the ALJ's assessment of Alison M's allegations about the limiting effects of her symptoms. A couple of the ALJ's reasons for rejecting those allegations have already been addressed and called into question,

but the ALJ went on to discuss a couple more. In the main, she rejected Alison M's allegations of pain and fatigue because they were not supported by the medical evidence. Disregarding a claimant's allegations based on the medical evidence alone is a problem in all types of cases, *see, e.g,, Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016)(". . . we have repeatedly stated that 'an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.'"); *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016); *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (noting the recurrent error in decisions of Social Security ALJs of discounting pain testimony that can't be attributed to "objective" injuries or illnesses that can be revealed by x-rays, and collecting cases); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record), it's especially problematic in a fibromyalgia case.

The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment. *Vanprooyen v. Berryhill*, 864 F.3d 567, 568 (7th Cir.2017). There's no dispute here that Alison M has 18 of 18 trigger points. (R. 733, 736, 739, 743). Accordingly, "her testimony about pain and limitations from that disorder cannot be discredited solely because no objective medical evidence supported it." Vanprooyen, 864 F.3d at 572. See; Fibromyalgia, Diagnosis, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/ fibromyalgia/ diagnosis-treatment/diagnosis/dxc-20317823 (visited Nov. 27, 2017). Moreover, as the ALJ noted, Alison M was prescribed norco, a narcotic pain reliever. (R. 24). This should have further bolstered the credibility of Alison M's complaints, *see Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir.

2018)(pain complaints in fibromyalgia case supported by prescription for opioid pain medication) but the ALJ seemingly ignored it. All in all, this seems to be a case where the "ALJ's analysis reveals that [s]he misunderstood the nature of her fibromyalgia pain." *Gerstner*, 879 F.3d at 264.

Not only that, but the rationale is just plain wrong. For example, the ALJ says the record, and Ms. Mackenzie's treating physician, fail to document non-restorative sleep or chronic fatigue. (R. 25). Yet, the record is replete with treatment records noting that Alison M was suffering from fatigue and non-restorative sleep. The records are consistent in this regard, visit after visit. (R. 731, 734, 737, 745, 746, 593, 596). It's not clear what more the ALJ might have wanted. The doctor is not going to watch Alison M sleep night after night. She shows up at her appointments complaining of fatigue and there's no indication the doctor doubts her. His acceptance of her complaints as valid is underscored by the treatment he prescribes. These documented complaints, consistent over time, can't just simply be dismissed out of hand.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to remand the ALJ's decision is [Dkt. #9] is granted, and the defendant's motion [Dkt. # 13] is denied. This case is remanded to the Commissioner for further proceedings.[2]

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/28/19

---

[2] Alison M asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As thatr is not the case here, an award of benefits is not appropriate without further administrative proceedings.